IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK08-82997-TLS |
| | ) | |
| KENNETH MACK STILLWELL and | ) | CH. 7 |
| MELISSA MAE STILLWELL, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on January 9, 2012, on a motion to amend Schedule G filed by Debtors (Fil. #34), and a resistance filed by creditor Inner Circle Properties, L.L.C. (Fil. #36). Dan Peters appeared for Debtors, and David Skalka appeared for Inner Circle Properties, L.L.C. ("Inner Circle").

Based on the discussion and the arguments at the hearing, all parties agreed that despite the manner in which the motion was presented, the motion would be treated as a motion to determine whether certain obligations of Mr. Stillwell under a guaranty to Inner Circle was discharged. The parties were granted the opportunity to submit additional briefs on the issues addressed at the hearing, and this matter is now ripe for decision.

For the reasons that follow, I find that any obligations of Mr. Stillwell to Inner Circle pursuant to his guaranty were discharged.

### *Background*

The background facts are not in dispute.

1.      Mr. Stillwell was at all material times the president of Stillwell Chemical Supply, Inc., a Nebraska corporation ("Stillwell Chemical").

2.      On April 19, 2000, Stillwell Chemical, as lessee, entered into a lease with Inner Circle, as lessor, for certain space within a building located in Omaha, Nebraska.

3.      The lease was amended on a number of occasions to expand the space and to extend the term, with a final extension dated August 31, 2008,[1] extending the term through August 31, 2011.

4.      At the time the lease was originally executed by Stillwell Chemical, Mr. Stillwell signed a personal guaranty attached to the lease which provided in its entirety as follows:

---

[1]The agreement is dated August 31, 2008, and the signature of the tenant is also dated August 31, 2008. The signature of the landlord is dated November 15, 2008.

In consideration of the execution of the foregoing Lease by Lessor at the undersigned's request and on the faith of this guaranty, the undersigned hereby jointly and severally guarantee unto the Lessor and the Lessor's successors and assigns the due and timely payment of rent and performance of all of the covenants of the Lessee under said Lease and the payment of all expenses, including but not limited to attorney's fees, incurred in enforcing the Obligations of the tenant under said Lease or incurred in enforcing this guaranty, and the undersigned hereby jointly and severally waive notice of any default under said Lease and agree (i) that their liability hereunder shall not be released or affected by any extension of time for payment or by any forbearance or by any waiver or consent by the obligee herein or by any modifications of said Lease and (ii) that no notice of any of such default shall be required as a condition of the liability of the undersigned.

5.      Mr. Stillwell did not sign as guarantor on any of the amendments or lease extension agreements.  He also did not sign on behalf of the tenant, Stillwell Chemical.  Instead, Mack Stillwell, Kenneth's father, signed each of the extensions and amendments on behalf of the company.

6.      On November 19, 2008, Debtors filed their joint case under Chapter 7 of the United States Bankruptcy Code.

7.      At that time, Stillwell Chemical was current on all obligations to Inner Circle under its lease as extended.  Inner Circle was not listed in the bankruptcy schedules and did not receive notice of the bankruptcy filing.

8.      On February 23, 2009, Debtors received their Chapter 7 discharge and the case was subsequently closed as a no-asset case.

9.      Stillwell Chemical later defaulted on its obligations to Inner Circle under the lease as extended, liquidated its assets, and vacated the premises.  Inner Circle claims a balance due from Stillwell Chemical in excess of $38,000.00.  From the evidence provided, it appears that most of this sum pertains to rent that accrued after Stillwell Chemical vacated the premises through the time a new tenant began paying rent months later.

10.     Inner Circle asserts that it never would have entered into the sixth extension of the lease (dated as of August 31, 2008, but signed by a representative of Inner Circle on November 15, 2008) had it known Mr. Stillwell planned to file for Chapter 7 bankruptcy relief a few days later. Further, Inner Circle says it would have terminated the lease if Mr. Stillwell had told them he wished to revoke his guaranty and thereby would have avoided damages resulting from the later default by Stillwell Chemical.

11.     Inner Circle apparently took steps to collect on the guaranty because on August 30, 2011, Debtors filed a motion to reopen their Chapter 7 case "for the purpose of adding a creditor that was omitted from their bankruptcy."

12.    Inner Circle resisted the motion to reopen, but this court overruled the objection and allowed the case to be reopened as the issue of whether the guaranty to Inner Circle was discharged was not yet ripe.

13.    After reopening the case, Debtors filed a motion to amend Schedule G[2] to list the outstanding guaranty to Inner Circle.  At the hearing, Debtors' counsel acknowledged that he did not need court approval to file an amended schedule, but that he simply wanted to bring the issue of the guaranty to the attention of the court.  As a result, the parties agreed to treat Debtors' motion as a motion to determine whether Mr. Stillwell's obligations to Inner Circle under his guaranty were completely discharged when he received his Chapter 7 discharge.

### *Discussion*

The parties initially submitted briefs on the issue of whether a claim existed on a personal guaranty of a commercial lease that was current on the date of bankruptcy filing.  The court requested, and the parties provided, additional briefs on the issue of whether the guaranty obligation was discharged despite the lack of notice to Inner Circle since this was a no-asset bankruptcy case.

In summary, Inner Circle asserts two primary arguments.  First, it takes the position that Mr. Stillwell did not owe a pre-petition debt under the guaranty since the lease was current on the date of bankruptcy filing and, therefore, it did not have a pre-petition claim to file in Mr. Stillwell's bankruptcy.  It asserts that Mr. Stillwell's liability did not arise until the occurrence of a post-petition event, a default by Stillwell Chemical under the lease.  Thus, Inner Circle believes that it is a post-petition creditor that was not subject to the bankruptcy discharge.  Second, Inner Circle asserts that even if it can be deemed a pre-petition creditor whose claim was subject to discharge, its claim should not be discharged because it was unduly prejudiced by lack of notice of the bankruptcy.  Inner Circle believes that had it known of the bankruptcy and any attempted discharge or revocation of the personal guaranty, it could have terminated the lease (or not extended the lease) at that time and avoided the damages it subsequently incurred.  Mr. Stillwell, on the other hand, asserts that Inner Circle held at least a contingent claim that was discharged on the date of bankruptcy filing.

Inner Circle's arguments are based on several questionable and erroneous assumptions.  First, Inner Circle assumes that the guaranty is an absolute and continuing guaranty that was still in effect on the date of bankruptcy filing.  Surprisingly, Mr. Stillwell has not taken issue with this assumption.  The "guaranty" consists of one sparse paragraph that does *not* contain the typical language found in an absolute and continuing guaranty, although it does contain a statement that it is not affected by any "modifications" to the lease.  The lease was extended and the rental amount increased on several occasions after its initial term, each time *without* the signature of the guarantor.

---

[2]Schedule G pertains to executory contracts and unexpired leases.  Based on the ruling that follows, it does not appear that the lease at issue would constitute an executory contract.  In any event, it became irrelevant since all parties agreed to treat the motion as a request to determine whether Mr. Stillwell's liability under the guaranty was discharged.

Mr. Stillwell guaranteed the tenant's rental payment and covenant performance obligations under the defined lease, which at the time was for a limited amount of rent for a limited period of time for a limited amount of space.  Subsequently, the parties to the lease expanded the space, extended the term and increased the rent – all without a signature by Mr. Stillwell or a renewal of his guaranty, which seems to be much more than a mere modification of the defined obligations under the initial lease.  Since a guaranty is to be strictly construed under Nebraska law, the guaranty at issue is not an absolute and continuing guaranty that would apply to any  new and additional tenant obligations beyond the initial term.  *Knox v. Cook*, 233 Neb. 387, 392, 446 N.W.2d 1, 4 (1989) (Nebraska adheres to the rule of strict construction of guaranty contracts); *In re Estate of Fischer,* 227 Neb. 722, 727, 419 N.W.2d 860, 863 (1988) (holding that the liability of a guarantor is not to be enlarged beyond the strict terms of the contract).

Second, even *if* the guaranty could be construed to still be in effect on the date of bankruptcy filing, Inner Circle erroneously assumes that it could have terminated the lease and avoided damages had it known the guarantor was going to file bankruptcy.  The lease does not mention the guaranty.  Bankruptcy filing by the guarantor is *not* an event of default under the lease and did not give rise to *any* remedy for Inner Circle.  The last extension of the lease is dated August 31, 2008, and was signed by the tenant on that date.  The bankruptcy was not filed until November 19, 2008, so it is difficult to see how Inner Circle could have been prejudiced by failing to receive notice of bankruptcy filing.

Finally, Inner Circle's premise that it is a post-petition creditor because it did not hold a pre-petition debt is simply not supported by the plain language of the Bankruptcy Code.  "Debt"  is defined as a liability on a claim. 11 U.S.C. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5).  Thus, the definition of a claim in bankruptcy specifically includes contingent claims.  While the Bankruptcy Code does not define "contingent," the courts universally recognize that claims are contingent as to liability if the debt is one which debtor will be called upon to pay only upon the occurrence or happening of a future event.  *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980).  Liability under a lease guaranty that is current on the date of bankruptcy filing may be contingent on a future default by the tenant, but that does not mean the claim did not exist – it just means it is a contingent claim.  *See Stucker v. Cardinal Bldg. Materials, Inc.,* 153 B.R. 219 (Bankr. N.D. Ill. 1993); *In re Motley*, 268 B.R. 237 (Bankr. C.D. Cal. 2001).  Inner Circle also cites to certain bankruptcy court opinions that it believes support its position, but those cases are easily distinguishable[3] and, in any event, are not controlling.

---

[3]*In re Weeks,* 400 B.R. 117 (Bankr. W.D. Mich. 2009), involved unique facts and involved a guaranty of future indebtedness expressly undertaken by the guarantor rather than a guaranty of an ongoing lease.  *In re Haught*, 120 B.R. 233 (Bankr. M.D. Fla. 1990), involved a debt that was paid in full post-petition; and *Duncan v. Smith Turf & Irrigation, LLC (In re Duncan),* Adv. No. 06-06022 (Bankr. W.D. Va. Oct. 25, 2006) (unpublished), does not seem to support Inner Circle's position since the landlord did provide services to the tenant pre-petition.

Thus, even *if* the guaranty were still in existence and pertained to the lease obligations under the lease extension dated August 31, 2008,[4] then Inner Circle would have held at least a contingent claim, and therefore a "debt" on the date of bankruptcy filing.  Section 727(b) provides that a discharge granted under Chapter 7 of the Bankruptcy Code "discharges the debtor from all debts that arose before the date of the order for relief . . ." except to the extent the debt is nondischargeable under § 523.  Section 523(a)(3) provides that a discharge under Chapter 7 does not discharge the debtor for any debt that is "neither listed nor scheduled . . . in time to permit – . . . timely filing of a proof of claim . . . ."  As indicated, this was a no-asset case and no proof of claim deadline was ever established.  Therefore, the discharge exception in § 523(a)(3) does not apply and any contingent liability on the lease guaranty was discharged.  *Peggy Jean Gonzalez*, Case No. BK09-81123-TJM (Bankr. D. Neb. Oct. 20, 2011) (stating that in a no-asset case, "an omitted creditor cannot complain of prejudice to its right to claim a distribution."); *Hauge v. Skaar (In re Hauge)*, 232 B.R. 141, 147-48 (Bankr. D. Minn. 1999).

IT IS, THEREFORE, ORDERED that for the foregoing reasons, the motion (Fil. #34, as orally amended) is granted.  The guaranty signed by Mr. Stillwell dated April 19, 2000, did not apply to any obligations of Stillwell Chemical to Inner Circle under the lease extension agreement dated August 31, 2008, Inner Circle was not prejudiced by lack of notice in this bankruptcy case, and any obligations (contingent or otherwise) Mr. Stillwell may have had to Inner Circle were discharged by the discharge order entered herein.

DATED:  February 10, 2012.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Dan Peters
    David Skalka
    Richard D. Myers
    United States Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.

---

[4]As previously discussed, it was not still in existence and did not apply to the lease extensions.

-5-